UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SHAWN LAMAR HUNT,<br><br>   Plaintiff,<br><br>   v.<br><br>ASSA ABLOY ENTRANCE SYSTEMS US, INC., a foreign corporation; TARGET CORPORATION, a foreign corporation; DOE MANAGER; ROE DOOR COMPANY; ROE MAINTENANCE COMPANY; DOES II through X; and ROE CORPORATIONS III through X, inclusive,<br><br>   Defendants. | Case No. 2:24-cv-01980-GMN-EJY<br><br>**ORDER** |

Pending before the Court is Plaintiff Shawn Lamar Hunt's Motion for an Adverse Inference and Evidentiary Sanctions. ECF No. 18. The Court reviewed Plaintiff's Motion, Target Corporation's[1] Opposition (ECF No. 22), and Plaintiff's Reply (ECF No. 23). The Court finds as follows.

**I.    BRIEF SUMMARY OF RELEVANT FACTS**

Plaintiff asks the Court to strike Target's Answer or issue an adverse inference at trial because Target allegedly willfully destroyed evidence relevant to its liability. ECF No. 18 at 5, 11. Specifically, ten days after Plaintiff alleges he was injured by automatic doors that hit his shoulder as he was exiting a Target store, Plaintiff sent a letter to the store at which the incident occurred requesting preservation of: (1) "Any video of the subject incident," (2) "Any video of the subject area and automatic doors on the date of the subject incident for 2 hours prior to the subject incident," and (3) "Any video of the area for 1 hour after the subject incident." ECF No. 18-5 (the "Preservation Letter"). However, no video footage was preserved.

---
[1]    Hereinafter referred to as "Target."

1

Plaintiff testified at deposition that after learning that no footage was available he returned to Target and photographed a surveillance camera mounted on the door he claims closed on him. ECF No. 18 at 5. While preparing a Target employee (Johna Hinnah) for deposition the employee recalled seeing a patron photographing the camera at the store's outside exit door and, because she found this suspicious, the employee (Hinnah) took a screenshot of the security footage showing this event. ECF No. 22 at 3. Hinnah did not know who the patron was at the time she observed the patron taking the picture or when she captured a screen shot of the patron doing so. *Id.* Nonetheless, the screenshot captured Plaintiff photographing a security camera. While Plaintiff says the picture captures the door that hit him, Defendant says the screenshot proves "the exit doors would not have been captured by the security camera above the door." *Compare* ECF No. 18 at 5 *and* ECF No. 22 at 4. In fact, Hinnah testified at deposition that the photo taken by Plaintiff, on which he relies, does not show the exit doors Plaintiff alleges hit him, as that door was behind him. ECF Nos. 22 at 4; 22-7 at 5.

Further, although Plaintiff points to the screenshot as somewhat of a smoking gun, suggesting that it "raises serious questions as to why no surveillance video was preserved" (ECF No. 18 at 5), Target's employee, Hinnah, testified at deposition that she checked all cameras that surrounded the area, including the exit doors, pharmacy, Starbucks, and exterior cameras, none of which showed an incident involving Plaintiff. ECF Nos. 22 at 4; 22-7 at 4. Target argues that it "is not required to save video of something not seen." ECF No. 22 at 4.

## II.    DISCUSSION

Spoliation is a serious allegation that the Court must carefully analyze. Spoliation is defined as:

> the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. ... A party must preserve evidence it knows or should know is relevant to a claim or defense by any party, or that may lead to the discovery of relevant evidence. ... The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation.

*Gonzalez v. Las Vegas Metropolitan Police Dept.*, Case No. 2:09-cv-00381-JCM-PAL, 2012 WL 1118949, at *5 (D. Nev. Apr. 2, 2012) (internal citations omitted). The party seeking sanctions has

2

the burden of proving "by a preponderance of the evidence that the accused party actually destroyed, altered, or failed to preserve relevant evidence." *U.S. E.E.O.C. v. Wedco, Inc.*, Case No. 3:12-cv-00523-RCJ-VPC, 2014 WL 4635678, at *2 (D. Nev. Sept. 15, 2014), *citing LaJocies v. City of N. Las Vegas*, Case No. 2:08-cv-00606-GMN-GWF, 2011 WL 1630331, at *1 (D. Nev. Apr. 28, 2011).

A federal court is empowered to sanction a spoliating party under its inherent authority or Federal Rule of Civil Procedure 37. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *see* Fed. R. Civ. P. 37. Before imposing sanctions under Rule 37(e), at issue here, a court evaluates the following criteria: (1) whether the information qualifies as ESI; (2) whether there was a duty to preserve the ESI in the anticipation or conduct of litigation; (3) whether the ESI was lost because a party failed to take reasonable steps to preserve it; and (4) whether the ESI can be restored or replaced through additional discovery. *Lopez v. Cardenas Markets*, LLC, Case No. 2:21-cv-01915-JCM-BNW, 2023 WL 3182658, at *2 (D. Nev. May 1, 2023). The Court finds as follows.[2]

A.  Analysis of Whether Target Spoliated Evidence.

1.  *Relevant surveillance video existed.*

Target contends that "[s]ince there was no security video of the subject incident, there was no reason to preserve, since the subject incident was not seen." ECF No. 22 at 15. Target supports this returning to Hinnah's testimony, the Target employee who was ten feet away from Plaintiff at the time of the incident, who reviewed security video from multiple cameras and saw no incident involving Plaintiff. *Id*. at 4, 15. Predictably, Plaintiff returns to the screenshot taken of him photographing the security camera mounted above the "exit door" as evidence that Target could access surveillance footage from the area immediately surrounding the site of the incident. ECF Nos. 18-3, 18-4.

There is no dispute that the security cameras were functioning on the day of Plaintiff's alleged incident, or that Hinnah was able to access the surveillance footage to reach her conclusion that there was no footage capturing what Plaintiff claimed occurred. ECF No. 22 at 4 *citing* ECF No. 22-7 at 4. Target relies on the argument that surveillance video of Plaintiff's incident did not

---

[2] The Court finds that the video surveillance footage constitutes ESI. *Su v. NAB LLC*, Case No. 2:21-cv-00984-JCM-EJY, 2023 WL 9494449, at *2 (D. Nev. Dec. 4, 2023).

3

1  allegedly exist as proven by the photo taken by Plaintiff, which does not show the exit doors Plaintiff
2  says hit him, but instead shows a door that was behind Plaintiff when he took the picture.  ECF No.
3  22-7 at 5.  Plaintiff's Exhibit 4 (ECF No. 18-4) at best includes one photograph at page 3 that displays
4  an incomplete depiction of the two sets of automatic doors patrons go through when entering and
5  exiting the store.  *Id*. at 3.  It appears Target contends it is the interior set of these doors, which are
6  seen in the photograph, that Plaintiff claimed hit him.  However, it is not at all clear whether a camera
7  captures this set of door's movements.  Moreover, Plaintiff, whose burden it is to demonstrate
8  spoliation, does a poor job of explaining what occurred and what if any camera may have captured
9  the event.

10  Nonetheless, there is no dispute that some video footage existed that captured the automatic
11 doors that was retrievable by Target, but was not saved.  Given Plaintiff's Preservation Letter, even
12 if surveillance video showed no incident occurred and did not capture all the doors potentially at
13 issue, Target was on notice there was reasonably foreseeable litigation to which existing video
14 pertained.  Thus, the Court finds Plaintiff meets his burden that surveillance footage existed of the
15 area on the day of his alleged injury.

16  The Court further finds that given surveillance video captured some, if not all, of the
17 automatic doors that Plaintiff claims hit him, there is no doubt the video—no matter what it
18 showed—was relevant to the reasonably foreseeable litigation.  That is, "the video need not have
19 captured *all* of the alleged conduct in order to be relevant." *Collins v. Autozone, Inc.*, Case No. 2:22-
20 cv-00316-CDS-BNW, 2024 WL 1054684, at *4 (D. Nev. Mar. 11, 2024) (emphasis in original).
21 "Instead, … video is relevant if it could have corroborated (or disproven) at least some aspects of
22 Plaintiff's narrative." *Id*.  "Whether 'nothing' or 'something' was caught on film is an evidentiary
23 question of relevance.  This determination is the court's, and not [the party's], to make." *Patton v.*
24 *Wal-Mart Stores, Inc.*, Case No. 2:12-cv-02142-GMN-VCF, 2013 WL 6158467, at *5 (D. Nev. Nov.
25 20, 2013) (citing Fed. R. Evid. 401).

26  However, to demonstrate a party's obligation to preserve video, and therefore prove
27 spoliation of evidence, "a plaintiff must show more than just that the relevance of footage is unknown
28 … [Plaintiff] must explain how the evidence is relevant to her claims." *Alvarez v. Walmart, Inc.*,

Case No. 2:19-cv-02189-GMN-DJA, 2021 WL 7758614, at *4 (D. Nev. June 11, 2021) (finding that an overhead camera may be relevant to a slip and fall claim, even if it did not depict the plaintiff's fall or the source of a spill). Here, Target repeats that surveillance footage was not preserved because there was no footage showing an incident involving Plaintiff and, thus, Plaintiff cannot demonstrate there was surveillance footage relevant to his claim to preserve. ECF No. 22 at 5, 13. This argument is unpersuasive. With little doubt, the surveillance footage would be relevant if it had any tendency to corroborate or disprove any portion of Plaintiff's narrative. *Collins*, 2024 WL 1054684 at *4. At a minimum, the absence of any incident involving Plaintiff on surveillance footage would have potentially disproven all (if not aspects) of Plaintiff's claim. Further, at least arguably, surveillance footage may have corroborated or helped to prove or disprove Plaintiff's narrative by showing the amount of time that elapsed between when he approached the exit doors and when he stood outside the store thereby tending to show whether he was "trap[ped]" for any period of time by the automatic doors. If video showed Plaintiff breezed through the exit doors the notion that Plaintiff was "trapped" would be less likely.

In sum, Target struggles from the same "overarching problem" in their argument as did the defendant in *Patton*, which is "that 'nothing' is something. Even if 'nothing' was caught on film" footage from the surrounding cameras is nonetheless probative. *Patton*, 2013 WL 6158467 at *5 The Court therefore finds that no matter what the unpreserved surveillance video showed, the video was relevant to the reasonably foreseeable litigation of which Target was notified in Plaintiff's Preservation Letter.

### 2.   *Target had a duty to preserve the video.*

Rule 37(e) is based on the common law duty to preserve relevant information when litigation is pending or reasonably foreseeable. Fed. R. Civ. P. 37, Advisory Committee Note to 2015 Amendment (the "2015 Advisory Note"). Whether a party's duty to preserve is "reasonably foreseeable" is evaluated using an objective standard. *Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011). The mere existence of a potential claim or the distant possibility of litigation is not sufficient to trigger a duty to preserve. *Id*. Moreover, "[t]he rule does not apply when information is lost before a duty to preserve arises." *Mork v. Russell*, Case No. 3:21-cv-00077-

MMD-CSD, 2023 WL 7545518, at *2 (D. Nev. Nov. 14, 2023) (internal citations and quotations omitted). However, the duty to preserve arises upon the receipt of a preservation letter. *Small v. University Medical Center*, Case No. 2:13-cv-0298-APG-PAL, 2018 WL 3795238, at *59 (D. Nev. Aug. 9, 2018) (noting that a party was on notice and had a legal duty to preserve ESI no later than when it received the preservation letter); *see also Scalia v. County of Kern*, 658 F.Supp. 3d 809, 816 (E.D. Cal. 2023); *Collins,* 2024 WL 1054684 at *5 (noting the existence of a preservation letter as a reason why the duty existed).

Plaintiff sent Target a Preservation Letter ten days after the alleged incident. ECF No. 18-5. Plaintiff further asserts that this request fell within Target's thirty-day retention policy. ECF No. 18 at 5. Importantly, Target does not dispute this timeline or provide any information regarding when the Preservation Letter was received or when the surveillance footage was destroyed. *See* ECF No. 22, *generally*. Instead, Target argues that the Preservation Letter made an overbroad request for "ANY AND ALL VIDEO surveillance tapes from ALL cameras on the premises for the ENTIRE DAY." *Id.* at 13 (emphasis in original). Target over generalizes the letter. Plaintiff's letter made a request for video of the "subject incident" and "Any video of the subject area" of the incident for two hours prior and one hour after the subject incident. ECF No. 18-5. Moreover, Target was aware of the "subject incident" location because the day of the incident, Plaintiff filled out an incident report. ECF No. 18-1. The "ANY AND ALL" language pertains to the request that video from that day remain undisturbed in accordance with Target's legal duty to preserve evidence. *Id*. Based on the undisputed fact that Target received a Preservation Letter for footage of the incident prior to the lapse of retention under Target's policy, and that letter put Target on notice of reasonably foreseeable litigation, Target had a duty to preserve surveillance video that may have corroborated or disproven the future claim.

3. *Target did not take reasonable steps to preserve the video.*

In the context of ESI, "'reasonable steps' to preserve suffice; [Rule 37(e)] does not call for perfection." *Mork*, 2023 WL 7545518 at *5 (citing the 2015 Advisory Note). The 2015 Advisory Notes advises courts to consider the following factors when evaluating if a party took reasonable steps to preserve lost ESI: (1) a party's "good-faith operation of an electronic information system";

6

(2) a "party's sophistication with regard to litigation"; (3) "the extent to which a party knew of and protected against such risks"; and (4) whether the information is "destroyed by events outside the party's control." The 2015 Advisory Note. These factors weigh against Target.

The sophistication factor encourages courts to be sensitive to parties like individual litigants who "may be less familiar with preservation obligations than others who have considerable experience in litigation." *Id*. Here, of course, Target is a publicly traded corporation, national retail store. There can be no doubt that it is a sophisticated party. *See Tripp v. Walmart*, Case No. 8:21-cv-510-WFJ-SPF, 2023 WL 399764, at *5 (M.D. Fla. Jan. 25, 2023) (finding the failure to preserve "inexplicable" a sophisticated company like Walmart).

Target has not argued the video was lost due to some reason beyond its control such as a software attack or a natural disaster. *See* the 2015 Advisory Note. As a sophisticated party that received a preservation letter approximately ten days after the alleged incident, the Court finds that it was unreasonable for Target not to have retained the video based on one employee's review and determination that the video did not show Plaintiff being struck or trapped by its automatic doors.

While it remains unclear to the Court whether any of the surveillance cameras would have captured the doors Plaintiff claims hit him, the cameras in Plaintiff's Exhibit at ECF No. 22-4 shows various views of Target's automatic doors, but no clear view of the interior automatic doors Target claims are at issue. Target's repetition that its employee reviewed all surrounding video, which showed no incident involving Plaintiff, while a familiar tune, does not address whether any camera captures the interior doors. That a camera captured the exterior exit door does not seem reasonably disputed. *Id*. at 5. Without concluding what could have been or was captured, in the end, no matter what was or was not captured, Target retained nothing thereby failing to preserve evidence relevant to future foreseeable litigation.

4. *The surveillance video cannot be replaced.*

Rule 37(e) only applies when the ESI is lost. *Mork*, 2023 WL 7545518 at *5. If information can be restored or replaced through additional discovery no sanctions should issue. *Id*. In Plaintiff's attached declaration, he asserts that as part of the parties' meet and confer effort "defense counsel stated that they would check with Target to see if they had any other footage, but believed they

7

provided everything they had." ECF No. 18 at 4. Target does not argue in opposition to Plaintiff's Motion that anything was subsequently recovered. Thus, the Court finds the surveillance footage is no longer available, it is properly treated as irreplaceable.[3]

B. SANCTIONS.

Rule 37(e) provides for two levels of sanctions. "Section (e)(2) permits a court to impose more severe sanctions such as adverse inference jury instructions or dismissal, but only if it finds that the spoliating party 'acted with the intent to deprive another party of the information's use in the litigation.'" *Collins*, 2024 WL 1054684 at *3 (quoting 3 Fed. R. Civ. P. 37(e)(2)). Intent "is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hospitality Group LLC*, 95 F.4th 730, 735 (9th Cir. 2024). A district court may consider circumstantial evidence to determine intent, including "the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Id*. If the Court finds no intent, but nonetheless finds prejudice to the moving party from the loss of the information, the Court may only order proportionate sanctions that are no greater than necessary to cure the prejudice. Fed. R. Civ. P. 37(e)(1).

  *1.  There is no evidence Target acted with the intent to deprive Plaintiff of relevant discovery.*

Plaintiff argues that Target's actions "reflect at least gross negligence, if not willful disregard for its legal duties."[4] ECF No. 18 at 16. Target argues that Plaintiff has failed to make this showing (ECF No. 22 at 12) and the Court agrees. Plaintiff cites to *Leon*, *supra* at 3, in support of its claim for willful spoliation. ECF No. 22 at 17. In *Leon*, the reviewing court found that the district court did not clearly err in finding willful spoliation when a party knew they were under a duty to preserve, but intentionally deleted files. 464 F.3d at 959. However, Plaintiff cannot point to a comparable act

---

[3] Of course, if Target can produce any footage in question, the Court will reconsider its ruling in this case. *See Mork*, 2023 WL 7545518 at *5.

[4] Plaintiff cites to *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 106 (2nd Cir. 2002), to support the proposition that negligence can be enough to show a culpable mind. ECF No. 18 at 17. Even if this Court were in the Second Circuit, the decision was superseded by the amendments to Fed. R. Civ. P. 37. *Hoffer v. Tellone*, 128 F.4th 433, 435 (9th Cir. 2025) (noting that the Advisory Committee explicitly rejected the holding of cases like *Residential Funding* and creating a uniform standard in which negligence and gross negligence are not enough to impose adverse-inference instructions).

8

here. Target's employee reviewed the surveillance footage and, after concluding that none of it showed any incident involving Plaintiff, believed there was nothing to retain. Thus, while Target acted contrary to the law, the evidence does not demonstrate its failure to preserve was intended to deprive Plaintiff information to use in his litigation.

Plaintiff repeatedly alleges that Target engaged in selective preservation because it saved the screenshot of Plaintiff photographing the surveillance camera but did not affirmatively save any of the footage from the day of the incident. *See* ECF No. 18 at 16. This argument fails to demonstrate how Target acted with intent. "[T]he mere fact that some information was preserved and some was not does not necessarily amount to suspicious selective preservation." *Bistrian v. Levi*, 448 F.Supp. 3d 454, 476-77 (E.D. Penn. 2020). Target explained that the screenshot was taken to identify the person who was seen walking around taking photos of its exit camera, which was "suspicious" behavior that occurred *two years* after the incident. ECF No. 22 at 3. Saving this picture two years after the incident does not offer a credible basis on which an intent two years prior can be reasonably inferred. Plaintiff offers nothing that shows at the time a decision was made not to retain video footage, those making the decision acted with any motive other than the one based on the determination that the video showed nothing involving Plaintiff. The Court finds Plaintiff has not carried his burden to demonstrate the necessary intent to impose sanctions under Fed. R. Civ. P. 37(e)(2).

                2.       *Plaintiff establishes prejudice.*

A party is prejudiced when "spoliation prohibits a party from presenting evidence that is relevant to its underlying case." *Collins,* 2024 WL 1054684 at *6. It is within the discretion of the Court "to determine if the spoliation of evidence is prejudicial, and neither party has the burden of establishing or disproving prejudice." *Id*.

Plaintiff argues that he has experienced prejudice because the footage would have served as "objective proof of the core events," and in its absence, allows Target to "challenge or mischaracterize the sequence of events without fear of contradiction by video evidence." ECF No. 18 at 12, 23. While not explicitly addressing prejudice, Target repeatedly argues there was no relevant footage to preserve since its employee reviewed the footage and found that no incident with

9

Plaintiff occurred. ECF No. 22 at 4. It is true that a discovery sanction cannot be imposed based on the failure to preserve irrelevant evidence. *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 631 (C.D. Cal. 2013) *citing Centrifugal Force, Inc. v. Softnet Communications*, 783 F.Supp. 2d 736, 750 (S.D.N.Y. 2011). Here, even if the Court agrees that a video showing an alleged incident did not occur would not help prove a plaintiff's case, relevance is evidence that "makes a fact more or *less* probable than it would be without the evidence …." Fed. R. Evid. 401 (emphasis added). As discussed above, no matter if the surveillance footage would have helped or hurt Plaintiff's case, it was relevant. Therefore, the Court finds Plaintiff suffers some prejudice as a result of Target's failure to preserve the surveillance footage.

### III.   REMEDY

Because the Court finds Target did not act with intent to deprive Plaintiff of use of the missing surveillance footage, the Court lacks the discretion to impose any of the sanctions enumerated in Rule 37(e)(2) therefore precluding imposition of an adverse jury instruction. The Court nonetheless concludes that because Target's actions resulted in the destruction of relevant evidence, and this, potentially, resulted in some prejudice to Plaintiff's ability to prove his claims. Rule 37(e)(1) provides that any sanction imposed against a party that fails to take reasonable steps to preserve ESI cannot be greater than that necessary to cure the prejudice suffered by Plaintiff. The Advisory Committee Notes provide an appropriate example of a measure as "permitting the parties to present evidence and argument to the jury regarding the loss of information." The 2015 Advisory Note. After careful consideration, the Court finds this to be the appropriate sanction here.

### IV.   ORDER

Accordingly, and based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's Motion for Adverse Inference Jury Instruction (ECF No. 18) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Plaintiff is permitted to present evidence and argument to the jury regarding the loss of information allowing the jury to draw reasonable inferences from this

argument. This does not preclude Target from making counter arguments seeking alternative inferences.

DATED this 28th day of August, 2025.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE