**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SHAWN LAMAR HUNT

                    Plaintiff,

    vs.

ASSA ABLOY ENTRANCE SYSTEMS US,
INC., *et al.*,

                Defendants.

Case No.: 2:24-cv-01980-GMN-EJY

**ORDER ON MOTIONS FOR
SUMMARY JUDGMENT**

    Pending before the Court is Defendant Assa Abloy Entrance Systems US's Motion for Summary Judgement, (ECF No. 24). Plaintiff Shawn Lamar Hunt filed a Response, (ECF No. 28), to which Assa Abloy filed a Reply, (ECF No. 32). Also pending before the Court is Defendant Target Corporation's Motion for Summary Judgment, (ECF No. 25).[1] Hunt filed a Response, (ECF No. 29), to which Target filed a Reply, (ECF No. 31). For the reasons discussed below, the Court **GRANTS** Assa Abloy's Motion for Summary Judgment and **DENIES** Target's Motion for Summary Judgment.

## I.    <u>BACKGROUND</u>

    This action arises from injuries Plaintiff suffered on October 24, 2022 when he was caught in the sliding glass doors of a Target store in Henderson, Nevada. Defendant Assa Abloy installed the doors in question in 2020. (Timmerman Dep. 15:1–2, Ex. A to Assa Abloy MSJ, ECF No. 24-1). Target had a contract with Assa Abloy to maintain and service the doors. (Agreement, Ex. B to Assa Abloy MSJ, ECF No. 24-1). Six months prior to the incident at issue here, Assa Abloy had last serviced the doors on April 28, 2022. (Timmerman Dep. 17:16–18:8, Ex. A to Assa Abloy MSJ).

---

[1] Defendant subsequently filed a notice of corrected image of the Motion for Summary Judgement ("MSJ") at ECF No. 26. The Court will refer to the motion at ECF No. 25 as the Original Target MSJ, and the corrected image at ECF No. 26 as the Corrected Target MSJ.

During the planned maintenance, a technician from Assa Abloy conducted around 20 checks to ensure compliance with the standards set by the American Association of Automatic Door Manufacturers. (*Id.* 18:12–20).  The Assa Abloy technician found the doors to be in order. (*Id.* 18:11–12).  In his deposition, Assa Abloy's director of code compliance testified that he was unaware of any other issues with the door, aside from a threshold replacement.[2] (*Id.* 19:15–19).  On the morning of the incident, Target conducted a safety check of the doors as per protocol. (Kim Dep. 15:22–16:10, Ex. D to Assa Abloy MSJ, ECF No. 24-1).

On October 24, 2022, Plaintiff visited the Silverado Ranch Target. (Hunt Dep. 14:10, 27:16–17, Ex. 2 to Target Resp., ECF No. 29-2).  While Plaintiff was shopping, he realized he had left his debit card in his car and left the store to retrieve his card. (*Id.* 69:5–9).  As he exited, he followed a family through two sets of doors. (*Id.* 72:17–73:8).  Plaintiff recalled that the second set of doors was already open as the family approached it. (*Id.* 74:18–25).  He acknowledged that he did not notice anything unusual about the doors. (*Id.* 76:17–25).

As he approached the doors, Plaintiff was looking down while trying to locate his card in his wallet. (*Id.* 77:9–24).  In his deposition, he explained that, as he went through the doors, he suddenly felt the doors hit him on either side. (*Id.* 78:1–16).  Plaintiff contends that when the doors met his arms, instead of retracting, they continued to close on Plaintiff, causing him to twist his spine. (*Id.* 80:1–25).  Plaintiff had to break "violently" out of the doors. (*Id.* 81:1–7).

After the incident, Plaintiff continued to watch the door for two or three minutes and observed that it was operating normally. (*Id.* 84:5–23).  Plaintiff acknowledged that he did not notice any issues with the exit doors as he entered the store. (*Id.* 89:7–17).  He reported the issue to an employee, who referred him to a manager. (*Id.* 92:13–17.)  The manager retrieved a

---

[2] A threshold replacement was requested on November 3, 2022, and installed on July 7, 2023. (Timmerman Dep. 23:19–24:4, Ex. A to Assay Abloy MSJ).  The threshold is the aluminum strip that goes across the doorway and often needs to be replaced. (*Id.* 20:9–13).  A damaged threshold does not impact door operation but may cause a trip hazard if it comes detached from the floor; it may also cause the door to drag when opening or closing. (*Id.* 24:6–16).

Guest Incident Report from the security room and filled it out. (*Id.* 93:7–94:12); (Incident Report, Ex. 1 to Target Resp., ECF No. 29-1).

After Plaintiff reported the incident, Target's Property Manager Lead, Michael Kim, performed a safety check on the doors. (Kim Dep. 24:21–25, Ex. D to Assa Abloy MSJ).  He found no issues with the door's functionality. (*Id.* 24:24–25).  On January 31, 2023, Assa Abloy conducted an Incident Response Inspection on the doors in response to Target's notification that there was an accident at the store. (Timmerman Dep. 9:15–10:3, Ex. A to Assa Abloy MSJ, ECF No. 24-1).  The technician found the doors were functioning properly. (Halpern Rep. at 3, Ex. H to Target Corrected MSJ, ECF No. 26-8).

Plaintiff filed a complaint in Nevada state court on August 13, 2024, and Target removed the case to this Court on October 22, 2024.  Defendants Assa Abloy and Target now moves for summary judgment on the sole negligence claim against them.

## II.   **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd.*

*P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible

discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   <u>DISCUSSION</u>

Both Defendants move for summary judgment on Plaintiff's sole negligence claim. To state a claim of negligence under Nevada law, a plaintiff must allege (1) defendant owed plaintiff a duty of care, (2) defendant breached that duty, (3) causation, and (4) damages. *See Perez v. Las Vegas Medical Ctr.*, 805 P.2d 589, 590–91 (Nev. 1991). A business owner owes its patrons a duty to keep the premises in a reasonably safe condition for use. *Sprague v. Lucky Stores, Inc.*, 849 P.2d 320, 322 (Nev. 1993). "[L]iability may be found if the condition was created by the proprietor or his agent or, if created by another, the proprietor had actual or constructive notice of its existence." *Asmussen v New Golden Hotel Co.*, 392 P.2d 49, 50 (Nev. 1964). "Without notice of the hazard, either actual or constructive, [defendant] did not have a duty. In the absence of duty, there is no negligence as a matter of law." *Mills v. Wal-Mart*

*Stores, Inc.* No. 2:16-cv-00097-KJD-CWH, 2017 WL 4038398 at *5 (D. Nev. Sept. 13, 2017). The Court first considers Target's Motion for Summary Judgement.

### A. Target's Motion for Summary Judgment

Target acknowledges that it had a duty of ordinary care to render the premises reasonably safe. (Target MSJ 13:6–12, ECF No. 26). However, it argues that its duty did not extend to provide notice of a hazardous condition because it had no notice of such a condition. (*Id.*) (Assa Abloy MSJ 3:17–21). Plaintiff contends that there is a genuine dispute of material fact as to whether Target had a duty in this instance, and also asserts that Target's negligence can be inferred under the doctrine of res ipsa loquitur. The Court first examines whether Target is entitled to judgment as a matter of law because Plaintiff has failed to establish that a duty existed.

### 1. Duty

The parties do not dispute that Target was neither directly responsible for nor had actual notice of the doors' potential malfunction. (Resp. Target MSJ 7:9–9:19). The issue of duty then rests on whether Target had constructive notice of the hazard. For a party to be on constructive notice, the hazard must be "virtually continuous." *Sprague*, 849 P.2d at 323. Target argues that Plaintiff has offered no evidence that it had constructive notice of the hazardous condition. (Target Corrected MSJ 17:9–20). Rather, Target conducted daily safety checks, which did not reveal any malfunctions. (Halpern Rep. at 4, Ex. H to Target Corrected MSJ, ECF No. 26-8). Moreover, aside from this incident, Target did not receive any other reports of the door malfunctioning. (*Id.*). Plaintiff does not provide evidence that the malfunctioning doors were a virtually continual hazard: for example, instances of an intermittent malfunction that would put Target on notice. The Court finds that Target has met its initial burden in negating an essential element of the claim.

The burden then shifts to Plaintiff to demonstrate that Target had constructive notice of the hazardous condition. *Sprague*, 849 P.2d at 323.  "A plaintiff satisfies this burden by presenting evidence to show that the hazard is a 'virtually continual' condition". *Rios v. Dollar Gen. Mkt. & Dolgen Midwest, LLC*, 2:15-cv-02056-JAD-VCF, 2017 WL 3749495 at *2 (D. Nev. Aug. 29, 2017) (quoting *Sprague*, 849 P.2d at 323).  In *Sprague,* the Nevada Supreme Court found that a grape on the floor of a supermarket created a virtually continual hazard because, based on the evidence presented, a reasonable jury could find that the supermarket knew that produce was often on the floor and that sweeping did not keep the area clean. 849 P.2d at 323.  The store had constructive notice because there was "virtually continuous debris" on the floor, and the store should have known that at any time a hazardous condition might exist. *Id.*

In cases involving complex mechanisms, courts have found potential liability when safety checks were insufficient, or if the cause of the malfunction would have been readily revealed by an adequate investigation. *See, e.g.*, *Am. Elevator Co. v. Briscoe*, 572 P.2d 534, 537 (Nev. 1977) (finding potential negligence when maintenance was reduced from a standard 50 hours a week to 12); *Otis Elevator Co. v. Reid*, 706 P.2d 1378, 1381 (Nev. 1985) (finding negligence when the elevator malfunctioned several times and operator failed to investigate cause); *Balistreri v. Richard E. Jacobs Group, Inc.*, 322 F. Supp. 2d 972, 980 (E.D. Wis. 2004) (finding constructive notice when defendant failed to make recommended safety inspections of a sliding door).

Plaintiff offers no evidence that the hazard, i.e. the sudden closing of the sliding doors, was virtually continual.  He asserts that Target should have been aware of an intermittent defect but is unable to show that a sudden or intermittent malfunction of the doors was an ongoing problem. (Target Resp. 8:8–14, ECF No. 29).  He instead argues that the mere fact that the door hit him creates a triable issue of fact.  Nevada law makes clear that an accident occurring on the

premises does not by itself establish negligence. *Sprague* 849 P.2d at 322.  Plaintiff is therefore incorrect that the claim of a singular instance of a door malfunctioning creates a triable issue as to whether Defendants had constructive notice.

Plaintiff also relies on *Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010) for the proposition that the malfunction of the doors is itself enough to establish liability. (Target Resp. 11:19–12–1).  However, in that case, the Ninth Circuit was looking at a case of products liability, not negligence. *See Primiano*, 598 F.3d at 562.  Unlike negligence, products liability is subject to strict liability, i.e. a malfunction may establish a prima facie case of a product defect. *Stackiewcz v. Nissan Motor Corp. in U.S.A.*, 686 P.2d 925, 927–8 (Nev. 1984).  Here, Plaintiff has brought an action for negligence, not products liability.  He has not cited any authority that Nevada has adopted such a standard in a negligence action.

Plaintiff also contends that the daily safety checks and maintenance contract are evidence of Target's awareness that the doors may malfunction. (Target Resp. 12:22–24).  He fails, however, to point to any inadequacies in Target's safety protocol.  In the authority that Plaintiff cites around sliding door cases, *Balistreri* and *Landmark Hotel & Casino*, the plaintiffs offered evidence that either the owner had either not performed the recommended safety checks or did not have an ongoing maintenance contract to service the doors. *Balistreri*, 322 F. Supp. 2d at 980; *Landmark Hotel & Casino v. Moore,* 757 P.2d 361 (Nev. 1988).  Here, Plaintiff did not submit any similar evidence that Target ignored recommended safety protocols.[3]

Lastly, Plaintiff contends that Target was negligent in failing to report the incident to Assa Abloy. (Hooper Rep. at 7, Ex. 3 to Target Resp., ECF No. 29-3).  However, this testimony deals with Target's actions *after* the doors' malfunction; it does not demonstrate that Target

---

[3] Plaintiff's expert does mention that he was not provided with records of daily safety checks. (Hooper Rep. 7, Ex. 3 to Target Resp. ECF No. 29-3). That lack of evidence, however, is not enough to rebut Target's evidence that it did conduct a check every morning.  Moreover, Plaintiff's expert, upon examining the doors in question, was unable to point to a malfunction that should have been revealed during a routine safety check.

was on constructive notice *prior* to Plaintiff's accident.  Thus, the evidence does not create a genuine issue of fact as to constructive notice.

While the Court agrees with Plaintiff that he does not have to demonstrate the specific cause of the malfunction, he does have to offer evidence that Target should have known of any potential defects.  Plaintiff has failed to do so.  He has only pointed to a single instance of door malfunctioning.  As a matter of law, he has failed to establish that Defendants had constructive notice.  The Court therefore finds that he has failed to meet his burden of establishing a genuine issue of material fact as to whether Defendants had constructive notice of the malfunction.

### 2. Res Ipsa Loquitur

Plaintiff then argues that a jury could infer that Target was negligent under the doctrine of res ipsa loquitur. *See, e.g.*, *Symeonides v. Trump Ruffin Com., LLC*, 789 F. Supp. 3d 1005, 1021 n. 102 (D. Nev. 2025) ("*Res ipsa loquitur* is a doctrine that allows two elements of negligence, duty of care and breach, to be inferred from the very nature of the accident, even without direct evidence of how any defendant behaved.") (quoting *Baisley v. Slade Indus., Inc.*, 22-CV-3791 (KMK), 2024 WL 3012568, at *11 (S.D.N.Y. June 13, 2024)).  Res ipsa loquitur is not an independent cause of action, but "allows a party 'to infer negligence' when (1) the event is of a kind that 'ordinarily does not occur in the absence of someone's negligence,' (2) it is 'caused by an agency or instrumentality within the exclusive control of the defendant,' and (3) it was not due to any voluntary action or contribution of the plaintiff.'" *Underwood v. O'Reilly Auto Parts, Inc.*, 671 F. Supp. 3d 1180, 1193 (D. Nev. 2023).  It is "a balancing doctrine, and while [the] plaintiff need not show the exact cause of any injury, he must at least show that it is more probable than not that the injury resulted from the defendant's breach of duty. *Am. Elevator Co.*, 572 P.2d at 537.  "It is a question of law whether *res ipsa* may apply to a given set of facts." *Ashland v. Ling-Temco-Vought, Inc.*, 711 F.2d 1431, 1437 (9th Cir. 1983)).

Plaintiff has shown that res ipsa applies to these facts.  Target does not contend that Plaintiff has failed to produce evidence to support that Target was in exclusive control of the doors at the time of the incident, nor that the injury was due to any voluntary action or contribution of Plaintiff. (*See generally* Target Reply, ECF No. 31).  The Court therefore only considers the remaining contested element: whether the event here is of a kind that ordinarily does not occur in the absence of someone's negligence.  The Nevada Supreme Court has recognized that sliding glass door malfunctions do not usually occur in the absence of negligence. *Landmark Hotel & Casino*, 757 P.2d at 364 ("Automatic sliding glass doors of the type that injured Moore are ubiquitous, affording the public safe ingress and egress to countless facilities on a daily basis. What happened to Moore is unusual; it strongly suggests a malfunction attributable to negligence.").  Thus, as a matter of law, this is a case in which the doctrine of res ipsa can apply.  Moreover, Assa Abloy's Expert Witness, Jon Halpern, described the sliding doors' overlapping sensors.  (Halpern Rep. 8–9, Ex. H to Corrected Target MSJ).  He testified that, for the accident to happen as described, both motion sensors, the presence sensors, and the controller would have to fail simultaneously. (*Id.*).  The Court finds that a reasonable jury may infer from that evidence that such extensive failure would not likely happen absent Target's negligence.  Thus, Plaintiff has met his burden of raising a genuine issue of material fact to prevent summary judgment on his res ipsa theory of negligence, and Target's Motion for Summary Judgment is DENIED.

### 3.  Assa Abloy's Motion for Summary Judgment

The Court next considers Defendant Assa Abloy's Motion for Summary Judgement (ECF No. 24).  Assay Abloy argues that Plaintiff has failed to establish a duty beyond its contract to service and maintain the doors. (Assa Abloy MSJ 13:19–26).  It was not the owner or occupier of the store, but merely a vendor who performed maintenance work when requested to do so by Target. (*Id.*).  Like Target, Assa Abloy argues that it lacked constructive notice that

would give rise to a duty, as the notice that it had regarding the doors' performance came from Target itself. (*Id.* 5:3–15). Assa Abloy has offered evidence that, in the period between Assa Abloy's planned maintenance on April 29, 2022, and the incident with the Plaintiff on October 22, 2022, they did not receive any reports to indicate the doors were malfunctioning in any way. (Timmerman Dep. 55:19–56:8, Ex. A to Assa Abloy MSJ). Assa Abloy also argues that Plaintiff has failed to produce evidence of its negligent maintenance; rather he has submitted an expert report that only addresses Target's negligence. (*Id.* 7:1-21). The Court agrees and therefore finds that Assa Abloy has met its burden of demonstrating Plaintiff has failed to submit evidence sufficient to prove an essential element of the claim.

The burden then shifts to Plaintiff to demonstrate a genuine issue of material fact. As noted above with Target, Plaintiff does not offer any evidence that there was a continual hazard that would put Assa Abloy on notice of a possible malfunction. Plaintiff relies on *Balistreri v. Richard E. Jacobs Grp. Inc.*, 322 F. Supp. 2d 972 (E.D. Wis. 2004), for the proposition that an independent contractor has a contractual duty to perform non-negligent maintenance and repairs. (Assa Abloy Resp. 8:10–19). Plaintiff misreads *Balistreri*. Firstly, the court there was interpreting negligence under a Wisconsin "safe place" statute, which imposes a higher duty of care than common tort law. *Balistreri*, 322 F. Supp 2d at 977. Secondly, nowhere in the case is the proposition that Plaintiff claims: there is no third-party maintenance contractor mentioned. Rather, the court found there was an issue of fact when the owner of a premises failed to perform basic safety checks on sliding glass doors. *Id.* at 980.

Plaintiff also argues that the Court should find Assa Abloy liable for any unexpected malfunction. (Assa Abloy Resp. 9:17–27). However, as analyzed above, he did not plead a products liability claim and has cited no authority permitting a theory of strict liability to apply to negligence. Moreover, and fatally for Plaintiff's claim, he has only introduced expert testimony of Target's purported negligence, not Assa Abloy's. (Hooper Rep. 5–7, Ex. 3 to

Target Resp.).  Plaintiff's expert witness testified that Target did not follow industry standards, did not meet safety requirements, and should have known the doors would be dangerous. (*Id.*). He did not offer similar testimony regarding Assa Abloy.

For the above reasons, the Court finds that Plaintiff has failed to demonstrate a genuine issue of material fact as to the negligence claims against Assa Abloy.  The Court therefore **GRANTS** Defendant Assa Abloy's Motion for Summary Judgement.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Assa Abloy's Motion for Summary Judgement, (ECF No. 24) is **GRANTED.**

**IT IS FURTHER ORDERED** that Target's Motion for Summary Judgment, (ECF No. 25), is **DENIED**.

**IT IS FURTHER ORDERED** that the remaining Parties will have thirty days from the date of this Order to file a jointly proposed pretrial order pursuant to LR 16-3(b) using the form provided in LR 16-4.

**DATED** this __19__ day of March, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court